

# United States Department of the Interior



OFFICE OF SURFACE MINING
RECLAMATION AND ENFORCEMENT
Charleston Field Office
1027 Virginia Street, East
Charleston, West Virginia 25301

FEB 15 2019

Certified Mail – Return Receipt Requested

Mr. John Flesher, Enforcement Coordinator
West Virginia Department of Environmental Protection
Division of Mining and Reclamation
601 57th Street SE
Charleston, West Virginia 25304

> *Re: TDN X18-111-391-001 TV 02:  Republic Energy, Inc.,*
> *Eagle No. 2 Mine, Permit Number S-3028-05.*

Dear Mr. Flesher:

This letter is to advise you that I have found the response of the West Virginia Department of Environmental Protection (WVDEP) dated November 15, 2018, to constitute appropriate action for both potential violations set forth in the aforementioned Ten-Day Notice (TDN).  The history and rationale for this decision follows below.

The subject TDN, which was sent to your agency on September 18, 2018, by the Office of Surface Mining Reclamation and Enforcement (OSMRE) is the result of a second informal review decision, dated July 26, 2018, that Glenda Owens, OSMRE Deputy Director, issued to WVDEP in response to a request from your agency for informal review of a determination that OSMRE's Charleston Field Office (CHFO) issued on June 8, 2012, in connection with TDN X12-111-391-002, which was issued to WVDEP on February 15, 2012.   In its 2012 determination, CHFO found that WVDEP's response to the 2012 TDN was arbitrary, capricious, and an abuse of discretion because the subject permit, which WVDEP initially issued to Marfork Coal Company, Inc., expired when mining had not started within three years of permit issuance.  For the reasons set forth in Deputy Director Owens's 2018 decision, mentioned above, she reversed CHFO's 2012 determination a second time.  She also instructed CHFO to issue a new

TDN with respect to two permit extensions that WVDEP purportedly granted regarding the subject permit.

Pertinent to this determination, in her 2018 decision, the Deputy Director found that, with respect to a 2012 extension that WVDEP granted to Marfork, section 22-3-8(3) of the West Virginia Code does not prohibit extensions after the three-year period, provided that the statutory grounds for an extension have been met. In this regard, the Deputy Director also found that WVDEP did not act arbitrarily or capriciously when, after discovering that Marfork did not commence operations within the three-year period, it followed its long-standing 1993 written policy by giving notice to the permittee of the statutory requirements, and requiring the permittee to identify its reasons for delay or face permit termination. In essence, the Deputy Director's decision allowed WVDEP to grant Marfork an extension after the three-year period had expired because WVDEP did not follow its 1993 policy of notifying the permittee before expiration of the three-year period. (In its response to the instant TDN, WVDEP also notes that "an extension request cannot be considered untimely until some point after WVDEP has provided a permittee with the requisite notice….") Finally, the Deputy Director also rejected the proposition that the regulatory authority can make "implicit extensions" (*i.e.*, extensions based on the theory that granting a permit renewal necessarily includes granting an extension).

As more fully discussed below, CHFO issued the subject 2018 TDN with respect to two potential violations: (1) it appears that the permittee, Republic Energy, Inc. (Republic Energy), formerly Marfork Coal Company (Marfork), failed to meet the statutory criteria for an extension of time that WVDEP granted on March 21, 2016, for permit # S-3028-05; and (2) it appears that the permittee failed to lawfully obtain an express (rather than implicit) permit extension in March 2013 for permit # S-3028-05.

Based on the information set forth below, I find that, pursuant to 30 CFR § 842.11(b)(1)(ii)(B)(2), your response to TDN X18-111-391-001 is not arbitrary, capricious, or an abuse of discretion under West Virginia's approved program because you have taken "appropriate action" to assure that the potential violations, as set forth in the aforementioned TDN, have been corrected or you have shown "good cause" for failing to do so. "Appropriate action" includes enforcement or other action authorized under the approved State program to cause the violation to be corrected. *See* 30 CFR § 842.11(b)(1)(ii)(B)(3). Circumstances constituting "good cause" for not taking appropriate action are set forth in 30 CFR § 842.11(b)(1)(ii)(B)(4). Good cause includes a showing by the State that the possible violation does not exist under the approved State program. *See* 30 CFR § 842.11(b)(1)(ii)(B)(4)(i). OSMRE will accept a regulatory authority's response to a TDN as constituting "appropriate action" or "good cause" unless the regulatory authority's response is arbitrary, capricious, or an abuse of discretion. *See* 30 CFR § 842.11(b)(1)(ii)(B)(2). Arbitrary, capricious, or an abuse of discretion means, with respect to a TDN response, that the regulatory authority has acted:

2

irrationally in that the regulatory authority's interpretation of its program is inconsistent with the terms of the approved program or any prior regulatory authority interpretation recognized by the Secretary of the Interior; without adhering to correct procedures; inconsistent with applicable law; or without a rational basis after proper evaluation of relevant criteria.

Furthermore, as set forth in detail below, with respect to the issues raised in the 2018 TDN, I find that WVDEP validly granted an extension of Republic Energy's permit on March 21, 2016, and that there was a valid basis for a retroactive extension with regard to the March 2013 permit termination date.

**Potential Violation #1:**

In our 2018 TDN, we stated among other things that, based upon available information, it appears that the permittee, Republic Energy, failed to meet the statutory criteria under W.Va. Code § 22-3-8(3) for the extension of time that WVDEP granted on March 21, 2016, for "not started" surface permit # S-3028-05. We noted that Republic Energy based its justification for an extension on financial hardship and questioned whether that was a valid reason for a permit extension.

West Virginia Code § 22-3-8(3) provides as follows:

> A permit terminates if the permittee has not commenced the surface mining operations covered by such permit within three years of the date the permit was issued: *Provided*, That the secretary may grant reasonable extensions of time upon a timely showing that the extensions are necessary by reason of litigation precluding commencement, or threatening substantial economic loss to the permittee, or by reason of conditions beyond the control and without the fault or negligence of the permittee....

In your November 15, 2018, response, you explain that in August 2015, Alpha Natural Resources (Alpha), the parent company of Republic Energy, filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code. WVDEP further explains that this pending legal proceeding could have precluded commencement of the mining operation. Furthermore, you explain that WVDEP was monitoring this litigation and realized that if it did not grant Republic Energy's permit extension request, it could have resulted in a loss of the permit as an asset. You also explain that on December 7, 2015, instead of litigating the matter, Alpha entered into a consent order with WVDEP to address its reclamation bonding requirements. Not-started permit # S-3028-05 was a self-bonded permit at the time, and you assert that due to the bankruptcy litigation, Alpha could not post the necessary collateral to obtain another bond for the permit. You also explain that, consistent with the consent order under an enforcement action relative to

bonding, the permitted mining operations could not commence. I agree that Republic Energy was precluded by litigation from commencing mining operations on the subject permit.

In addition, although not expressly stated by Republic Energy in its extension request, when WVDEP was processing the request, you assert that conditions existed that were beyond the control and without the fault or negligence of the permittee that precluded commencement of mining operations. Among other things, you explain that coal market conditions that were beyond the permittee's control precluded commencement of operations. You also reference the low price of coal and restricted markets at the time of the extension request. Finally, you explain that supplemental information from the permittee dated October 30, 2018, which you attached to your response to the TDN, demonstrates the conditions under which an extension of time for non-commencement of operations may be granted. However, because I have concluded that litigation existed in March 2016 that precluded commencement of mining operations and that independently forms a basis for WVDEP's extension, I do not also need to consider whether these additional conditions, alone or together, would also satisfy the other criterion for extension.

Given the reasons stated above, I find that WVDEP's action with regard to potential Violation #1 was not arbitrary, capricious, or an abuse of discretion under the approved State program. More specifically, I find that Republic Energy met the statutory criteria for an extension under W. Va. Code § 22-3-8(3), and WVDEP validly granted an extension of Republic Energy's permit on March 21, 2016.

**Potential Violation #2:**

In our 2018 TDN, we stated, among other things, that, based upon available information, it appears that the permittee failed to lawfully obtain an express permit extension in March 2013 for permit # S-3028-05 pursuant to W. Va. Code § 22-3-8(3). We also explained that WVDEP granted the permittee a permit renewal in March 2013, but it does not appear that WVDEP evaluated the permit extension criteria to determine if the permittee had met the necessary requirements for a permit extension.

In your response to the 2018 TDN, you explained that at the time of permit renewal approval, WVDEP grants a new 5-year term to conduct mining operations. You also explained that if operations are not commenced within 3-years of the start of the new term, which begins on the renewal date, a permit extension is required. Finally, you explained that if an extension is granted, it generally remains in place unit the next renewal date.

You further explained that, upon approval of the permit renewal application for the subject permit on March 19, 2013, WVDEP issued a new MR-2 Permit Face with a new 5-year term. You also explained that on the MR-2, it states, "Pursuant to Article 3, Chapter 22 of the Code of West Virginia, a PERMIT is hereby granted to the above-named permittee to engage in surface mining in the State of West Virginia." You claim that you consider the permit renewal to be a

4

permit re-issuance, and that when WVDEP approved the permit renewal, the permittee – Republic Energy (Marfork) – was not required to provide a justification for extension of the permit because it was the end of a permit term. You further explain that WVDEP's procedure has been only to require an extension at the three-year mark of each mining term if mining has not commenced by that point.

As an alternative, you refer to the supplemental information that the permittee sent to WVDEP on October 30, 2018, with a request for a retroactive extension. WVDEP maintains that, if an extension was required at renewal time, an extension would have been appropriate at the time of the March 2013 renewal because the permittee has shown it met the statutory criteria for an extension in its March 14, 2016, letter to WVDEP.

As stated in her July 26, 2018, informal review decision, Deputy Director Owens explained that "[i]n March 2013, prior to the June 6, 2013, deadline to commence operations or obtain an extension, it appears that WVDEP 'implicitly' extended the time for commencement of operations in conjunction with renewing the Marfork permit." The Deputy Director further explained that "in 2013, it does not appear that Marfork made a request for an extension, or that WVDEP made an express determination that Marfork either satisfied the requirements for an extension or should be granted one. Instead, WVDEP's position seems to be that the processes of granting permit extensions and permit renewals are inextricably linked and that granting a permit renewal necessarily includes granting an extension." As explained above, the Deputy Director rejected the proposition that a regulatory authority can make "implicit extensions" (*i.e.*, extensions based on the theory that granting a permit renewal necessarily includes granting an extension).

However, as Deputy Director Owens found in her 2018 informal review decision, a retroactive extension of a permit is permissible if the current permittee can show that it meets the statutory criteria for an extension. WVDEP acknowledged that the permittee submitted information on October 30, 2018, with a request for the retroactive extension of permit # S-3028-05. Furthermore, as explained above, WVDEP maintains that if an extension is required at the time of permit renewal, an extension would have been appropriate at the time of the March 2013 renewal because, in its March 14, 2016, letter that is attached to your response to the instant TDN, the permittee had shown it met the statutory criteria for an extension.

WVDEP's and the permittee's primary position appears to be that, if WVDEP does not follow its 1993 policy and notify the permittee in advance of the expiration date, the permittee can obtain a retroactive extension if it meets the extension criteria at the time that WVDEP does notify the permittee about the need for an extension, rather than at the expiration date. While this position may have some merit, I need not fully decide the issue here because the permittee has provided information that supports a finding that the permittee would have satisfied the extension criteria at the 2013 termination date. As set forth below, given the totality of the circumstances and the

5

information before me, I find that WVDEP has properly granted an extension to the permittee with respect to the 2013 termination date.

As mentioned above, two of the criteria that would justify an extension are litigation precluding commencement and conditions beyond the control and without the fault or negligence of the permittee. On February 13, 2012, an individual filed a citizen complaint alleging that the subject permit had expired by operation of law when mining did not commence within three years of permit issuance. On February 15, 2012, CHFO issue a TDN to Marfork, the former holder of the subject permit. On June 8, 2012, I determined that the subject permit had expired on June 6, 2011. The permit termination date relevant to this decision is June 6, 2013, but, at that time, WVDEP did not follow its 1993 policy and notify the permittee of the expiration date. WVDEP sought informal review of CHFO's decision, and, on August 20, 2013, OSMRE's Deputy Director issued an informal review decision finding that the subject permit did not terminate on June 6, 2011. Prior to the Deputy Director's 2013 decision, the only pronouncement from OSMRE was my determination that the permit had expired. On October 21, 2013, Coal River Mountain Watch (CRMW) filed two complaints in Federal district courts challenging the Deputy Director's 2013 decision and arguing that the permit had expired. The plaintiff voluntarily dismissed one of the cases, and the other case was remanded to OSMRE to issue a new informal review decision. As explained above, the Deputy Director issued a new informal review decision on July 26, 2018, which, among other things, instructed CHFO to issue the subject TDN.

In the permittee's October 30, 2018, letter, which is included with your TDN response, the permittee references the *Coal River Mountain Watch* litigation. The permittee states that: "Any operator with a permit that had arguably expired under the theory of the CRMW in that case was objectively justified in needing an extension instead of commencing operations." However, because the litigation referenced above was not actually filed until after the June 6, 2013, termination date, the litigation alone would not satisfy the extension criteria related to litigation. However, as the events described in the prior paragraph reveal, the permittee was facing the permit termination issue ever since OSMRE received the initial citizen complaint. As the TDN process progressed, the likelihood of litigation increased. In addition, as mentioned above, at the time of the June 6, 2013, permit termination date, my June 8, 2012, finding that the subject permit had expired was the last word WVDEP and the permittee had from OSMRE, until the Deputy Director's August 20, 2013, informal review decision that reversed my decision. Against this backdrop, I agree that it was reasonable for the permittee to be wary of commencing mining while the termination issue was up in the air. Moreover, there was a present threat of litigation at the relevant 2013 permit termination date.

Based upon the discussion above, I find that, in addition to the threat of litigation, there were conditions beyond the control of the permittee that justify the retroactive extension at the time of

6

the 2013 termination date. Furthermore, I agree that the permittee's retroactive extension request, contained in its October 30, 2018, was timely because WVDEP did not follow its 1993 policy and notify the permittee of the upcoming permit termination date and the need for an extension in March 2013. Therefore, I find that WVDEP's actions with regard to potential Violation #2 were not arbitrary, capricious, or an abuse of discretion under its approved State program for the reasons set forth above.

**Opportunity for Informal Review:**

In accordance with 30 CFR § 842.11(b)(1)(iii)(A), you may file a request for informal review of this determination. Authority to conduct these reviews and render a final decision has been delegated by OSMRE's Deputy Director to the appropriate Regional Director. Therefore, your request for informal review must be submitted to:

> Thomas Shope, Regional Director
> U.S. Department of the Interior
> Office of Surface Mining Reclamation and Enforcement
> Appalachian Region
> Three Parkway Center
> Pittsburgh, Pennsylvania 15220.

Your request for informal review must be received by Mr. Shope within five days from your receipt of this determination.

Please contact me if you have any questions regarding this determination or OSMRE's informal review procedures.

Sincerely,

Roger W. Calhoun, Director
Charleston Field Office

cc:  James V. Wood III,
     Republic Energy, LLC

7